UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COLIN BANCROFT,

               Plaintiff,

v.

MINNESOTA LIFE INSURANCE COMPANY,

               Defendant.

CASE NO. C17-1312JLR

ORDER DENYING MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Before the court is Plaintiff Colin Bancroft's motion for summary judgment on his claims that Defendant Minnesota Life Insurance Company ("Minnesota Life") breached their insurance contract, acted in bad faith, violated Washington's Insurance Fair Conduct Act ("IFCA"), and violated Washington's Consumer Protection Act. (MSJ (Dkt. # 7).) Minnesota Life opposes Mr. Bancroft's motion on substantive grounds and also on the basis of Federal Rule of Civil Procedure 56(d). (Resp. (Dkt. # 21).) Specifically, with

regard to Rule 56(d), Minnesota Life argues that it is entitled to engage in discovery prior to responding to Mr. Bancroft's motion. (*Id*. at 8 -10.) The court has considered the motion, Minnesota Life's response, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court (1) grants Minnesota Life's request for relief under Rule 56(d), and (2) denies Mr. Bancroft's motion for summary judgment but without prejudice to refiling, if appropriate, following discovery.

## II.  BACKGROUND

Mr. Bancroft is an employee of King County. (Bancroft Decl. (Dkt. # 8) ¶ 2.) Minnesota Life issued a Group Term Life Insurance Policy ("the Policy") to King County. (Compl. (Dkt. # 1-1) ¶ 4; Ans. (Dkt. # 4) ¶ 4.) As a part of his benefits package from King County, Mr. Bancroft is covered under this policy. (Compl. ¶ 6; Ans. ¶ 6.) The Policy's Basic Life Insurance pays one year's salary upon acceptance of a claim. (Compl. ¶ 6; Ans. ¶ 6.) Mr. Bancroft also paid for Supplemental Life Insurance which provides for an additional four years of salary as a death benefit. (*Id.*)

Included in the Policy is an Accelerated Benefits Policy Rider ("the ABPR"), which provides "for the accelerated payment of . . . the full . . . amount of an insured's death benefit . . . [i]f the insured has a terminal condition as defined in the [ABPR]." (Marisseau Decl. (Dkt. # 16) ¶ 4, Ex. A.) The ABPR defines a "terminal condition" as "a

---

[1] Mr. Bancroft requests oral argument. (*See* MSJ at title page.) The court, however, does not believe that oral argument is necessary for proper disposition of this motion. *See* Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument."). Further, there is no prejudice to Mr. Bancroft in denying his request, because the court denies his motion without prejudice to refiling if appropriate.

condition caused by sickness or accident which directly results in a life expectancy of twenty-four months or less." (*Id.*) The insured must request the accelerated payment and give Minnesota Life "evidence that satisfies [Minnesota Life] that the insured's life expectancy, because of sickness or accident, is twenty-four months or less." (*Id.*) The evidence that the insured provides "must include certification by a physician." (*Id.*) Minnesota Life also "reserve[s] the right to ask for independent medical verification of a terminal condition." (*Id.*) Additionally, it "retain[s] the right to have the insured medically examined at [its] own expense to verify the insured's medical condition." (*Id.*) Finally, "[i]n the case of a difference of opinion, the insured has the right to mediation or binding arbitration conducted by a disinterested third party who has no ongoing relationship with either party." (*Id.*)

After undergoing a series of tests in late January 2017, Dr. Sherry Hu diagnosed Mr. Bancroft with stage IV mantle cell lymphoma on February 1, 2017, and recommended immediate treatment. (Bancroft Decl. ¶ 6.) On February 6, 2017, Mr. Bancroft came under the care of Dr. Andrew Cowan. (*Id.*) Mr. Bancroft chose to see Dr. Cowan because he is an oncologist with expertise in mantle cell lymphoma. (*Id.*) Dr. Cowan prescribed a treatment regime, and Mr. Bancroft started chemotherapy on February 17, 2017. (*Id.* ¶ 7.)

After his diagnosis, Mr. Bancroft completed a Notice of Claim for Accelerated Benefit, which was a form provided by Minnesota Life. (*Id.* ¶ 11, Ex. C.) Mr. Bancroft submitted this claim form to Minnesota Life on or about May 16, 2017. (*Id.*) He requested payment of "100%" of the accelerated benefit at that time. (*Id.*)

Dr. Cowan filled out the "Attending Physician's Statement," which was part of the form Minnesota Life provided. (*See id.* at 5-6.) Dr. Cowan stated that Mr. Bancroft was "diagnosed w/Stage IV Mantel Cell Lymphoma high risk leukemia presentation w/elevated LDH." (*Id.* at 5.) He also stated that Mr. Bancroft was undergoing VR-CAP treatment,[2] his Mantel Cell Lymphoma International prognostic index ("MIPI") score was 7.2,[3] and his progress was "[i]mproved." (*Id.* at 5-6.) Based on a 2007 "publication in cancer (PMID 17477385)," Dr. Cowan opined that "the median survival for [Mr. Bancroft] would be 24 months." (*Id.* at 6; *see also id.* ¶ 16, Ex. G.) The paper on which Dr. Cowan based his conclusion was published before the MIPI score was developed in 2008. (Shapland Decl. ¶ 18.) Dr. Cowan provided his own contact information, as well as the contact information for Dr. Hu. (Bancroft Decl. ¶ 11, Ex. C at 6.) The Attending Physician's Statement included the following request: "Please Attach Medical Records." (*Id.*) Dr. Cowan did not attach any medical records. (*See id.*)

Upon receipt of Mr. Bancroft's claim, Minnesota Life forwarded it to its medical reviewer, Dr. Maryam Shapland, for an evaluation of Mr. Bancroft's prognosis. (*See* Shapland Decl. ¶ 7.) The MIPI score is a "well-recognized evidence based prognostic index for patients with mantle cell lymphoma." (*Id.* ¶ 8.) A physician can determine an MIPI for any individual diagnosed with mantle cell lymphoma based on four independent

---

[2] VR-CAP is a combined form of chemotherapy comprised of rituximab, cyclophosphamide, doxorubicin, vincristine, and prednisone. (Shapland Decl. (Dkt # 22) ¶ 13.)

[3] The MIPI score was first published as a prognostic index in 2008 and was validated in a subsequent 2014 study. (*See* Marisseau Decl. (Dkt. # 16) ¶ 19, Ex. I; *see also* Shapland Decl. ¶ 8.)

factors: age, performance status, lactate dehydrogenase ("LDH") and leukocyte count. (*Id.* ¶ 9.) A biologic MIPI includes those same four factors but also includes analysis of Ki-67 positive cells. (*Id.*) An MIPI score from 6-12 is considered to be a high-risk MIPI score. (*Id.* ¶ 10.) Mr. Bancroft's attending physician, Dr. Cowan, scored Mr. Bancroft's MIPI at 7.2. (*Id.*; Bancroft Decl. ¶ 11, Ex. C at 5.) The 2008 report that first identified the MIPI score indicated that patients with a high-risk MIPI score had a median overall survival of 29 months and patients with a high-risk biologic MIPI score had a median overall survival of 37 months. (Shapland Decl. ¶ 11.) The use of the MIPI score to determine overall survival was confirmed in a later 2014 study. (*Id.* ¶ 12.) In the 2014 study, a younger group with high-risk MIPI scores had a medial overall survival of 46 months. (*Id.*) The elderly group with a high-risk MIPI score has a median overall survival of 31 months. (*Id.*) The median overall survival for the entire group was 34 months. (*Id.*)

Dr. Shapland considered the information in the Attending Physician's Statement, including Mr. Bancroft's MIPI score, his leukemic presentation, his VR-CAP treatment, as well as Dr. Cowan's assessment that Mr. Bancroft had "[i]mproved" and that Dr. Cowan expected "a fundamental or marked" "[i]mprovement" in Mr. Bancroft's condition. (*Id.* ¶¶ 13, 17.) In addition, Dr. Shapland considered the fact that VR-CAP treatment is considered superior to the type of treatment that the patients in the 2014 study received; that VR-CAP was not in use when the 2007 paper, upon which Dr. Cowan relied, was written; and that studies published since 2007 demonstrate that life expectancy for patients with mantle cell lymphoma is improving based on the emergence

of new treatments, such as VR-CAP. (*See id.* ¶¶ 14-20.) Based on all of this information, Dr. Shapland opined that the median survival for Mr. Bancroft was greater than 24 months. (*Id.* ¶ 21.)

Dr. Shapland did not contact either Dr. Cowan or Dr. Hu prior to reaching her opinion. (*See generally id.*; *see also* Cowan Decl. (Dkt. # 9) ¶¶ 11, 15; Hu Decl. (Dkt # 10) ¶ 9.) Further, Minnesota Life did not seek an independent medical examination of Mr. Bancroft. (Bancroft Decl. ¶ 12.)

On June 8, 2017, Minnesota Life sent a letter to Mr. Bancroft regarding his claim, stating that "[a]t this time, we are unable to consider this benefit." (Bancroft Decl. ¶ 16, Ex. D; Marisseay Decl. ¶ 6, Ex. C.) Minnesota Life explained:

> With the information we received from your doctor, we are unable to determine, at this time, if your life expectancy will be less than 24 months, which the policy requires. Your doctor did indicate on the claim form that your condition was terminal and provided a life expectancy of 24 months. Per medical literature, median survival for your diagnosis is 37 months. You were diagnosed in January 2017. You are currently undergoing treatment and your physician states that your condition has improved and marked change (improvement) is continued to be expected. We understand that this is a difficult and sensitive issue. Please be assured this is not a permanent denial of benefits. At this time, however, the medical information does not support a life expectancy of 24 months or less, which the policy requires. If you have new information that supports a life expectancy of 24 months or less, please submit it for our review and we will gladly reassess your claim for the Accelerated Benefit.

(*Id.*)

Mr. Bancroft did not submit any additional information to Minnesota Life in response to its June 8, 2017, letter. (*See* Resp. at 5.) On June 22, 2017, Mr. Bancroft, through his counsel, sent a 20-day IFCA notification letter to both the Office of the

Insurance Commissioner and to Minnesota Life asserting numerous violations of Washington's Administrative Code ("WAC") and other statutory violations. (Frost Decl. (Dkt. # 11) ¶ 2; Bancroft Decl. ¶ 16, Ex. E.) Minnesota Life admits that it received Mr. Bancroft's 20-day IFCA letter. (*See* Compl. ¶ 44; Ans. ¶ 44.) Mr. Bancroft asserts that Minnesota Life did not respond to his letter within the 20-day period. (*See* MSJ at 8.)

On August 2, 2017, Mr. Bancroft filed this lawsuit in King County Superior Court. (*See* Compl.) Minnesota Life removed the action to this court on September 15, 2017. (*See* Not. of Rem. (Dkt. # 1).) Mr. Bancroft filed his motion for summary judgment on October 25, 2017. (*See* MSJ.) Along with the motion, Mr. Bancroft filed a declaration from Dr. Cowan. (*See* Cowan Decl.)

On September 15, 2017, Minnesota Life's counsel advised Mr. Bancroft's counsel that Minnesota Life considered the complaint to be a renewal of Mr. Bancroft's claim, consistent with Minnesota Life's June 8, 2017, letter. (Marriseau Decl. ¶ 7.) On November 1, 2017, Dr. Shapland re-assessed Mr. Bancroft's claim and determined that as of May 26, 2017, the median survival was 29 months for someone with the same factors as Mr. Bancroft. (*Id.* ¶ 18, Ex. H.) In making this determination, Dr. Shapland reviewed the additional information that Mr. Bancroft provided in the course of this lawsuit, including Dr. Cowan's declaration, as well as the relevant medical literature. (*See id.* ¶ 19, Ex. I.) In her notes on her second review, Dr. Shapland states:

> Review of the declaration by Dr. Cowan states that "The same publication by Hoster et al, Blood, 2008, using the regular MIPI score, also provides a median life expectancy of 29 months for individuals with similar factors as

> Mr. Bancroft" indicates that Mr. Bancroft has similar factors as the patients who had a HR regular MIPI score used in the 2008 study. Given this information, and as 5 months have passed since the APS [Attending Physician's Statement] was signed by Cowan, it is reasonable to conclude that a patient with a HR regular MIPI with leukemic presentation, treated with VR-CAP, who is now approximately 10 months from diagnosis has a life expectancy of 24 months or less.

(*Id.*) Based on Dr. Shapland's re-assessment of Mr. Bancroft's claim, Minnesota Life determined that it now had satisfactory evidence to pay the claim, and it did so on November 3, 2017. (*Id.* ¶ 20.)

Meanwhile, on October 18, 2017, Mr. Bancroft received notification that Minnesota Life had issued subpoenas to both Dr. Cowan and Seattle Cancer Care Alliance. (Crowe Decl. (Dkt. # 14) Ex. 4.) The subpoenas requested: "All medical records, including but not limited to, reports, correspondence, tests, test results, treatment procedures and treatment results, and any and all documents pertaining to Colin Bancroft." (*See id.* at 2, 8.) On October 26, 2017, Mr. Bancroft filed a motion to stay or quash discovery until after the court considers his motion for summary judgment. (*See* MTSD (Dkt. # 13).) The court denied Mr. Bancroft's motion on November 13, 2017. (Min. Entry (Dkt. # 19).) In its response to Mr. Bancroft's motion for summary judgment, Minnesota Life requests that the court deny the motion based on Federal Rule of Civil Procedure 56(d) and allow it the opportunity to obtain discovery on disputed issues of fact. (Resp. at 7.)

### III. ANALYSIS

Federal Rule of Civil Procedure 56(d) provides that if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to

justify its opposition, the court may . . . defer considering the motion [for summary judgment] or deny it . . . ." Fed. R. Civ. P. 56(d)(1). Rule 56(d) "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).[4] To obtain relief under Rule 56(d), a party must show "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *State of Cal. v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). The district court's decision on a Rule 56(d) motion is reviewed for an abuse of discretion. *Kitsap Physicians Serv.*, 314 F.3d at 1000.

Minnesota Life's attorney filed a declaration in support of it Rule 56(d) request. (*See* 2d Marisseau Decl. (Dkt. # 23).) Minnesota Life's counsel attests that due to Mr. Bancroft's motion to stay or quash discovery, Minnesota Life was unable to obtain documents in response to Minnesota Life's subpoenas to Mr. Bancroft's medical providers prior to responding to Mr. Bancroft's motion on November 13, 2017. (*Id.* ¶ 5.) Minnesota Life's counsel also issued subpoenas for the depositions of both Dr. Hu and Dr. Cowan, but was unable to conduct these depositions prior to responding to Mr. Bancroft's motion. (*See* Marisseau Decl. ¶ 17; 2d Marisseau Decl. ¶ 5.) Finally,

---

[4] *Kitsap Physician Services* refers to Federal Rule of Civil Procedure 56(f). 314 F.3d at 1000. Rule 56(d) was formerly Rule 56(f). "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56, Committee Notes on Rules-2010 Amendment. Precedent under Rule 56(f) applies to Rule 56(d). *See Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 (9th Cir. 2011).

Minnesota Life is in the process of retaining an oncologist as an expert witness to provide an opinion on Mr. Bancroft's life expectancy and prognosis based on his medical information and whether those records would have provided a different determination of life expectancy than a review of Dr. Cowan's Attending Physician's Statement. (2d Marisseau Decl. ¶ 9.)

Mr. Bancroft's motion necessarily seeks judgment as a matter of law on the following factual issues:

(1) Whether Mr. Bancroft's life expectancy on May 26, 2017, was 24 months or less;

(2) Whether Dr. Shapland's medical opinions regarding Mr. Bancroft's life expectancy were reasonable;

(3) Whether Minnesota Life should have requested Mr. Bancroft's medical records prior to denying payment on the policy on June 8, 2017, and whether its failure to do so was reasonable;

(4) Whether Minnesota Life should have sought an independent medical examination of Mr. Bancroft in connection with his May 26, 2017, claim, and whether its failure to do was reasonable; and

(5) Whether Minnesota Life's failure to seek Mr. Bancroft's medical records or an independent medical examination prior to denying payment on the policy on June 8, 2017, proximately caused any harm to Mr. Bancroft. (*See generally* MSJ.)

All of the foregoing listed issues are at play in Mr. Bancroft's motion for summary judgment concerning his claim for breach of contract, as well as his statutory and

common law bad faith claims. All of these issues rely, at least in part, on the opinion testimony of Dr. Cowan. The court agrees with Minnesota Life that it is entitled to obtain discovery into these issues prior to responding to Mr. Bancroft's early motion for summary judgment.[5] *See Kickstart Motorsports, Inc. v. AMCO Ins. Co.*, No. CV 14-2727-DOC (ANx), 2014 WL 12469920, at *1 (C.D. Cal. Aug. 6, 2014) (granting the insurance company's Rule 56(d) request where insured filed an early motion for summary judgment prior to the issuance a scheduling order and the insurance company provided a declaration explaining the discovery it needed to respond to the insured's motion). Further, Minnesota Life has diligently pursued the discovery at issue here but was thwarted in its attempts to obtain the necessary information prior to filing its

---

[5] Mr. Bancroft asserts that "[d]iscovery into facts that the insurer previously found no reason to review, cannot alter the unreasonable reasons for the insurer's denial." (*See* Reply (Dkt. # 240 at 12.) This argument is apparently an outgrowth of Mr. Bancroft's reliance on the "mend the hold" doctrine. (*See* MSJ at 22.) Under Washington law, the mend the hold doctrine may be invoked to preclude insurers from introducing new or changed bases for denying insurance coverage once litigation has begun. *See Ledcor Indus. (USA) Inc. v. Virginia Sur. Co., Inc.*, 2012 WL 223904, at *2 (W.D. Wash. 2012) (precluding reliance on a new or changed basis for denying insurance coverage). To prevail under this form of estoppel, the insured must demonstrate that he "either suffered prejudice or the insurer acted in bad faith when the insurer failed to raise all its grounds for denial in its initial denial letter." *Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167 (Wash. 2000); *see also, Bosko v. Pitts & Still, Inc*., 454 P.2d 229 (Wash. 1969) ("[I]t is the general rule that if an insurer denies liability under the policy for one reason, while having knowledge of other grounds for denying liability, it is estopped from later raising the other grounds in an attempt to escape liability, provided that the insured was prejudiced by the insurer's failure to initially raise the other grounds."). First, even if the mend the hold doctrine is otherwise applicable to this action, the court found no case in Washington that limited a party's ability to obtain discovery on the basis of the doctrine. Indeed, by denying Mr. Bancroft's motion to stay discovery, the court has, in effect, ruled that Minnesota Life is entitled to obtain discovery on the issues raised by Mr. Bancroft's summary judgment motion. (*See* Min. Entry.) Second, there is no indication that Minnesota Life intends to provide a new basis for its June 8, 2017, decision following discovery. (*See* Resp. at 21 ("There is no possibility the requested discovery will be used as a 'new' basis for denial . . . .").) Accordingly, the court concludes that the mend the hold doctrine is in applicable to Minnesota Life's Rule 56(d) request.

response to Mr. Bancroft's summary judgment motion by Mr. Bancroft's motion to stay discovery. (*See* Marisseau Decl. ¶¶ 8-17; 2d Marisseau Decl. ¶ 9.) Accordingly, the court denies Mr. Bancroft's motion for summary judgment based on Rule 56(d)(1) without prejudice to refiling it, if appropriate, after Minnesota Life has had an opportunity to obtain the discovery referenced herein.[6] *See* Fed. R. Civ. P. 56(d)(1).

## IV. CONCLUSION

For the foregoing reasons, the court grants Minnesota Life's request for relief based on Rule 56(d) (Dkt. # 21) and denies Mr. Bancroft's motion for summary judgment (Dkt. # 7). The court's denial of Mr. Bancroft's motion, however, is without prejudice to refiling, if appropriate, after Minnesota Life has an opportunity to obtain the discovery referenced herein.

Dated this 20th day of February, 2018.

JAMES L. ROBART
United States District Judge

---

[6] Because the court denies Mr. Bancroft's motion on the basis of Rule 56(d), it does not reach the merits of Mr. Bancroft's motion.